UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **CHRISTINE TOUCHET** | **07-11402** |
| DEBTOR | |
| | |
| **TOWER CREDIT, INC.** | ADV. NO. |
| PLAINTIFF | **07-1149** |
| V. | |
| **CHRISTINE TOUCHET** | |
| DEFENDANT | |

## MEMORANDUM OPINION

Tower Credit, Inc. ("Tower") sued for a determination that its claim against debtor Christine Touchet is not dischargeable under 11 U.S.C. §523(a)(2)(A). This memorandum opinion sets forth the reasons why the obligation is nondischargeable under 11 U.S.C. §523(a)(2)(A) and (B).

## FACTS

Ms. Touchet submitted a written application to Tower for a $10,639.75 loan to buy a 2001 Ford Mustang on September 25, 2006.[1] She admitted signing the application below a preprinted statement representing that all information in the application was true,[2] though she testified that she herself had not completed the form or given all of the information on the form to Tower's representative when she applied.

---

[1] September 25, 2006 Tower credit application (Exhibit P-3).

[2] Tower Credit Application, verification page (Exhibit P-4).

Touchet's loan application listed only two creditors: Citi Finance and Mazda American Credit.[3] It also contained the written notation "going to sell" under the monthly payment to Mazda.[4] Stephen Binning, Tower's president, testified that the debtor led him to believe at the time of the application that, upon the sale of the Mazda vehicle, she would pay off the Mazda debt.[5] Touchet acknowledged that the notation "going to sell" was on the application, but asserted she could not sell the car for enough money to pay off the Mazda loan.

Ms. Touchet eventually defaulted on the Tower loan, and Tower obtained a state court judgment against her on February 13, 2007.[6]

Touchet filed chapter 7 on October 4, 2007. Schedule F listed several debts she incurred before September 2006 that were not listed on Ms. Touchet's loan application to Tower.[7] At the meeting of creditors, the debtor admitted signing the schedules.[8] When Tower's attorney asked Ms. Touchet about debts she'd scheduled in the bankruptcy case that were not disclosed on her application for the loan from Tower, the debtor answered

---

[3] Tower ran a credit report on the debtor at the time of the application. (Exhibit P-5).

[4] It was not clear from the evidence who wrote that notation on the application. Binning stated at trial that he filled out some of the application and his secretary filled out the rest.

[5] Binning stated that, based on Touchet's representation about paying off the Mazda loan, he excluded that debt from her budget when making Tower's loan decision.

[6] February 13, 2007 Judgment in "Tower Credit, Inc. v. Christine Touchet," No. 0701-00334 in the City Court of Baton Rouge, Louisiana (Exhibit P-2).

[7] Schedule F (Exhibit P-7) listed debts owed Hancock Bank (incurred in September 2006); Check Into Cash (incurred July 2006); HSBC (incurred May 2006); Capitol One (incurred in 1998); and Wal-Mart (incurred May 2006). It disclosed several other debts totaling $1005, indicating only that they had been incurred in 2006. The schedule also includes five debts totaling $2655 without reflecting the date on which they were incurred.

[8] Transcript of November 13, 2007 meeting of creditors, p.6, ll. 20-24 (Exhibit P-8).

2

that she did not know she had to disclose the debts to Tower.[9] The debtor also told the trustee at the creditors' meeting that she had surrendered her 2006 Mazda to the lien creditor in July 2006.[10]

Tower timely filed its complaint to determine the dischargeability of Touchet's debt to it.

## APPLICABLE LAW

Tower's complaint alleges the debtor's actions render her debt to Tower nondischargeable only under 11 U.S.C. §523(a)(2)(A), which excepts from discharge a debt:

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ---

> (A) false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's . . . financial condition . . . .*

(emphasis added).

Debts within section 523(a)(2)(A) are those obtained by fraud "involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made." *Gen. Elec. Cap. Corp. v. Acosta*, 406 F.3d 367 (5th Cir. 2005), citing *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992).

---

[9] Transcript of meeting of creditors, p. 14, l. 25; pp. 15-17, ll. 1-25.

[10] Transcript of meeting of creditors, p. 13, ll. 11-18. The debtor's testimony about the disposition of the Mazda vehicle was inconsistent. At trial, she confirmed her creditors meeting testimony that she surrendered the car *before* the 2006 Tower loan, but also stated she was confused about the actual surrender date. In her answer to the complaint, however, she had stated she intended to pay off the Mazda loan with the proceeds of a May 2006 accident settlement, but that the settlement had not materialized and she had ultimately surrendered that car the day *after* she bought the Ford Mustang from Tower.

3

To prevail under 11 U.S.C. §523(a)(2)(A), Tower as the objecting party must prove that: (1) the debtor made representations; (2) the debtor knew they were false when they were made; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F. 3d 1284, 1293 (5th Cir. 1995), citing *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991).

However, the debtor's allegedly false representations all were made in connection with her written application to borrow money from Tower. Thus, 11 U.S.C. §523(a)(2)(B) actually is the statute under which Tower should have sought relief. However, Tower's failure to plead that is not fatal to its case.

Federal Rule of Bankruptcy Procedure 7015(b) allows the amendment of pleadings to conform to the evidence if issues not raised in the original pleadings are raised at trial by express or implied consent of the parties. At trial, both parties offered evidence equally as relevant to a claim under section 523(a)(2)(B) as one under section 523(a)(2)(A). The defendant did not object to evidence tending to establish Tower's entitlement to relief under section 523(a)(2)(B). Thus, the evidence amended Tower's complaint to include a cause of action under 11 U.S.C. §523(a)(2)(B).[11]

Bankruptcy Code section 523(a)(2)(B) renders nondischargeable a debt for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by —

---

[11] *See Matter of Beauboeuf*, 966 F.2d 174, 177 (5th Cir. 1992) (citations omitted) (implying consent of the parties to trial of issues not raised in the pleadings where the parties has a "fair opportunity to defend" with respect to the amended issues and where additional evidence could have been presented had the amendment been made earlier).

       (B)   use of a statement in writing —

            (i)      that is materially false;

            (ii)     respecting the debtor's or an insider's financial condition;

            (iii)    on which the creditor to whom the debtor is liable for such…credit reasonably relied; and

            (iv)    that the debtor caused to be made or published with intent to deceive.

*Matter of Norris*, 70 F.3d 27, 29 (5th Cir. 1995).

## DISCUSSION

### A.  Tower Proved Its Claim Under 11 U.S.C. §523(a)(2)(A)

Tower has proven each of the elements necessary to established that Ms. Touchet's debt to it is not dischargeable under 11 U.S.C. §523(a)(2)(A).  Specifically, Ms. Touchet falsely stated that her only creditors on September 25, 2006, when she applied for the Tower loan application, were CitiFinancial and Mazda American Credit, and also misrepresented the disposition of her Mazda automobile.  By signing the application warranting the truth of those statements, the debtor knowingly gave Tower false information to get the loan.  "'When it is not disputed that a loan application was signed by the [d]ebtor, then the contents of the application should, in general, be attributed to the [d]ebtor and entitled at least to great weight, and perhaps decisive effect.'"  *In re Butski*, 184 B.R. 193, 195 (Bankr. W.D.N.Y. 1993), citing *In re Kabel*, 184 B.R. 422, 425 (Bankr. W.D.N.Y. 1992).[12]

---

[12]  Lack of care when signing loan documents can indicate a reckless disregard for the accuracy of the information in the documents, and this reckless disregard also supports a finding of intent to deceive for purposes of 11 U.S.C. §523(a)(2)(A).  *Butski* at 195.

Because direct proof of a debtor's intent to deceive is "'nearly impossible to obtain, the creditor may present evidence of surrounding circumstances from which intent may be inferred.'" *In re Reynolds*, 193 B.R. 195, 200 (D.N.J. 1996), quoting *Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987). During the application process, Touchet represented to Tower that she owned a Mazda automobile that she planned to sell in order to pay off the loan secured by the car. Binning stated that, based on these representations, he did not include the Mazda debt in Touchet's budget for purposes of approving the 2006 loan. Touchet admitted during the meeting of creditors that she voluntarily surrendered the vehicle before the loan was approved, a statement she confirmed at trial; both admissions contradict her statement about the car in her answer to Tower's complaint.[13] Her inconsistent statements about the car's disposition evidence a reckless disregard for the accuracy of her representations to Tower on this issue and therefore an intent to deceive Tower.

Further, the debtor's representations on Schedule F, made under penalty of perjury, contradict her statement on the Tower application that she had only two creditors on September 25, 2006. Her explanation at the creditors' meeting for this discrepancy – that she did not know she had to disclose the debts to Tower – is not credible, and the evidence supports an inference that Ms. Touchet intended to deceive Tower.

Tower argues that it relied on the information provided by Touchet to its detriment in extending a loan. It also contends that it would not have loaned Ms. Touchet the money had it known that she did not disclose all her debts, or that she could not satisfy her debt to Mazda by selling its collateral since she had in fact surrendered the car to Mazda.

---

[13] See footnote 10, *supra*.

However, under section 523(a)(2)(A), Tower also must prove that it *justifiably* relied on the debtor's representations. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed. 2d. 351 (1995). Justifiable reliance is gauged by "'an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.'" *In re Vann*, 67 F.3d 277, 288 (quoting *Prosser & Keaton on Torts* at 751). "'It is only where, under the circumstances, the facts should be apparent to one of the plaintiff's knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation on his own.'" *Id*. at 283 (quoting *Prosser & Keaton on Torts* at 752).

Tower established that it justifiably relied upon the information the debtor gave on the loan application as well as her signature affirming that all her disclosures were truthful. No evidence established that Tower should have anticipated that Touchet was deceiving it, thereby warranting further investigation by Tower. Indeed, Touchet's credit report reflected none of the debts the debtor later listed on her bankruptcy schedules.

B.  **Tower Proved that Touchet's Debt is Nondischargeable Under 11 U.S.C. §523(a)(2)(B)**

Tower also proved that the debtor's loan application contained materially false statements.

A written statement is materially false under 523(a)(2)(B) if it "'paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit.'" *Norris*, 70 F.3d at 30, quoting *In re Jordan*, 927 F.2d 221, 224 (5th Cir. 1991).

Touchet admitted that her Mazda had been seized before she applied for the Tower loan. She also admitted she failed to disclose all her creditors to Tower, though Touchet claimed that she did not know that she should have disclosed that information on her application. Her testimony on that point is not credible. By signing the application warranting the accuracy and completeness of the information she gave Tower, Touchet adopted the false information and misrepresented her financial condition for the purpose of 11 U.S.C. §523(a)(2)(B).[14]

Tower also proved that it reasonably relied on the debtor's misrepresentations.

For a declaration of nondischargeability, section 523(a)(2)(B) requires proof that the creditor *reasonably* relied on the debtor's false statements.

> The reasonableness of a creditor's reliance…should be judged in light of the totality of the circumstances. The bankruptcy court may consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Matter of Coston*, 991 F.2d 257, 261 (5th Cir. 1993).

Tower reasonably relied on Ms. Touchet's false statements. Touchet admitted that Tower previously had made loans to her.[15] No information Touchet gave Tower, or that Tower had a result of its earlier dealings with the debtor, reasonably can be characterized

---

[14] *In re Oh*, 278 B.R. 844, 860 (Bankr. C.D. Cal. 2002) ("[p]referring to know as little as possible about a transaction in which he really did not want to participate, the [d]ebtor simply signed whatever was put in front of him without any regard for its truth or falsity. A debtor cannot escape liability under section 523(a)(2)(B) by firmly putting his head in the sand and later claiming not to have known of the falsity of representations that were made on his behalf while his head was covered."); *Cadle Co. v. Orsini*, 2007 WL 1006919 at *5 (Bankr. E.D. Tex. 2007) (citation omitted) ("[a]s long as the written statement is written, signed, adopted or used by the debtor, the basic precondition concerning the writing requirement to the non-dischargeability complaint under section 523(a)(2)(B) is met.")

[15] Touchet's credit report reflects that she had paid three earlier debts to Tower. (Exhibit P-5, p.2.)

as a "red flag" that would warrant Tower's further inquiry into the debtor's credit application.  Finally, Tower obtained Touchet's credit report, which did not reflect any debt to the creditors later listed on the debtor's bankruptcy schedules.

Tower also alleged that it would not have loaned Ms. Touchet the money had it known that she had already surrendered her Mazda.  Tower relied on the information Touchet provided on the September 25, 2006 loan application, and had no reason to doubt that Touchet still owned and had control over the Mazda at that time.  Tower's reliance on the debtor's representations regarding her ownership and proposed sale of the Mazda was reasonable.

## CONCLUSION

Tower Credit proved that Christine Touchet's debt to it is nondischargeable under both 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(2)(B).

Baton Rouge, Louisiana, September 30, 2008.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE